the Southeast. Your Honor, CSI used the federal court as a backdoor to escape the state court's dismissal of the Section 155 claim. And when it did that, it subverted the fundamental purpose of the statute, which is to make sure that the same judge who decides coverage issues also decides whether a penalty would be appropriate. So by using the federal court to circumvent the decision and the appellate process of the state court, CSI undermined Illinois' system for resolving disputes in insurance coverage matters. Your Honors, the trial court should be reversed. So this began as an insurance coverage case, a declaratory judgment action in state court in 2012. In 2013, the state court dismissed, without prejudice, CSI's motion or claim under Section 155. In 2015, the state court ruled that selective insurance had an obligation under a policy of insurance to provide a defense to CSI, and in 2017 ruled that the amount payable under the policy for that duty was $195,000 for defense costs, which Selective paid and made them whole. And that should have been the end of this controversy. But while the state action was pending, CSI filed a parallel federal action raising the same claims that they had on the state case. And then in 2019, two years after the state court resolved the liability on the policy, the trial court meted out a penalty of almost $3 million in attorney's fees that were generated primarily in the federal action based solely on Selective's pre-litigation disclaimer letter in the state court. Your Honors, the trial court never should have considered Section 155 penalties in the first place because penalties under Section 155 can only be established if they're brought in the same action as those three specific items that are enumerated in that statute. So in Hennessy Industries versus National Union Fire Insurance Company, this court held that Section 155 simply provides an extra contractual remedy to an action on a policy. This court said that 155 is not a separate cause of action. It presupposes rather than authorizes a suit and may only be brought in the same case as one specified in the statute. That makes good sense, this court reserves resources and it avoids inconsistent judgments. Well here, Section 155 applies to those insurance cases where one of three issues remain undecided. That is whether there is an issue, liability under a policy of insurance, the amount payable there under, or an unreasonable delay in settling a claim. Now one of those issues was actually before the trial court at the time it meted out its penalty. There was no issue of liability in the policy that was decided in 2015 by the state court. There was no issue with the amount payable to the policy that was decided by the state court in 2017. And there was never an issue about delay in settling a claim because there was no claim to settle. CSI had settled its underlying litigation without any payment. And what's more, in the federal court, they weren't seeking, they weren't arguing a delay in a claim, they were arguing delay in paying a judgment that set forth in paragraph 79 through 81 of their first amendment complaint. And we know that Section 155 does not apply to delays in paying judgments. It's a penalty statute that refers only to claims. That was the rule in Nieman v. Economy Preferred Insurance. But no matter, Selective paid the underlying state court judgment even before the state court issued an order quantifying the amount. There was simply never a time when there was a delay in payment from Selective. Not only were these issues no longer alive before the trial court, the trial court didn't decide them. The trial court simply relied on the state court ruling on summary judgment to find that Selective had breached its contract as far as it went. Your Honors, Hennessey is as much about statutory construction as it is a rule of prudential caution. Statutory construction because the statute's clear as to the kinds of actions that it authorizes and the limited circumstances under which penalties may be available, all in the same case. It's a case of prudential caution because it preserves judicial resources, it avoids inconsistent results, just like we have in this case. This case, Your Honors, is exactly why Hennessey was decided in the first place, to make sure that Section 155 penalties are decided by the same court that actually decides the underlying coverage issues. Now, CSI argues that its pending claim for consequential damages is sufficient to support the penalties under 155. But the statute makes clear that 155 is punitive in nature and plays no role in determining a consequential damage. The trial court in this case quoted from UNR Industries v. Continental Insurance Company, which differentiated between penalties under 155 on the one hand and a consequential damage on the other. Penalties, the court said, the insured acts for the public good, like a private attorney general. But for consequential damages, purely private, they act on their own behalf. And so the court said that the penalties and consequential damages to be considered fruits of a separate action. Fruits of a separate action. And that's because, quote, compensation is wholly independent of the vexatiousness of the insurer's conduct. So a claim for consequential damages alone simply isn't within the language or the scope or the purpose of section 155. I'm only defending the case. If you're correct, this 155 action should not have been brought in the district court. I apologize, Your Honor. I could not hear the first part of your question, if you wouldn't mind repeating. I'm having some trouble with your argument simply because the state appellate court in disposing of the state case seemed to have actually approved a subsequent 155 action in the district court. Can you explain that to me? Yeah, thank you, Your Honor. The state trial court at the request of CSI said in an entry that they would permit the voluntary dismissal of their breach of contract claim and would permit them to continue to pursue the 155 claim in federal court. However, the state court, despite what that entry said, certainly had no authority to authorize the violation of the statute. The statute stands on its own, and the statute is very clear, and this court has made it very clear that the penalties and the underlying actions identified in the statute have to be brought in the same action. Nothing about the court's order could have authorized the splitting off of those claims, and certainly nothing in that court's order was binding on the federal court. What we have here is a simple error of law, and nothing that the state court did could have permitted that to take place. Even though the state appellate court there being a subsequent action. Your Honor, I actually do not think that that is accurate. The section 155 claim was dismissed by the trial court in 2013. The first appeal in the state court was in 2015, and the section 155 wasn't appealed, and then we had a second action in the appellate court ruling on the fee application. The section 155 claim wasn't really addressed there because it wasn't before the court, so I don't think that the state court of appeals addressed that issue, but to your point, one thing that is for sure about the state court decisions is that they reflected the complexity and the thoughtfulness that went into making that decision, and nothing in those decisions suggested that Selective had violated any ethical basis when it advanced its coverage claims. So respectfully, Your Honor, I don't think the state court of appeals addressed that issue. Have we ever approved of a freestanding section 155 action? Never. Never, and in fact, Your Honor, in the Hennessey case, this court expressly addressed that and said that the Seventh Circuit's reading of Kramer, which is the Illinois Supreme Court decision, is that the 155 claim does not stand alone. It is not a separate cause of action, and in that decision, they identified an intermediate appellate decision where that may have happened, and this court said, no matter. The Illinois Supreme Court says no, and that's what we're going to follow. So in fact, the Seventh Circuit has been adamant that 155 is not a standalone claim. That was the express holding in Hennessey, and I think Your Honor's question really underscores how important it is for the court to reiterate that today, that without this reaffirmation of the Hennessey rule, this problem can arise time and again. This can inflict the very harms that Hennessey was trying to avoid, burdening the risk, in fact, the certainty, in some cases, of inconsistent results. That's something we don't want to see happen between our federal and our state system. Your Honor, even if Hennessey didn't apply, the trial court still committed reversible error because it was supposed to consider the totality of the circumstances surrounding the coverage issues, but instead, it considered just one. It considered only the pre-litigation disclaimer letter by Selective Insurance that disregarded everything that happened in the state court action, and in doing so, it failed to take into account the very things that established the bona fides of Selective's defenses. For example, as we mentioned, the complexity of the coverage issues, the dismissal of the 155 claim in the state court, the fact that Selective voluntarily paid the judgment before the final state court were requiring it. What's even more troubling is that the sole basis for vexatious delay found by the trial court was the mere filing of the declaratory action judgment itself, but ordinary litigation does not establish vexatious delay. Now, CSI has argued that Selective is trying to create some post hoc rationalization for what it did, but in fact, that argument turns the law in Illinois on its head because in Employers Insurance of Wausau versus Elko Liquidating Trust, the leading case in Illinois, that court said that Illinois approves two forms of safe harbor for insurance carriers when there are coverage disputes. They can either tender a defense and a reservation of rights, or they can file a declaratory judgment action, and if they do either one of those two, they are permitted to develop coverage arguments after the disclaimer letter. But what happened here, of course, is that by refusing to consider what Selective argued in the state court, the trial court effectively imposed a rule of estoppel on Selective, which is contrary to the rule of law in Illinois. If permitted to stand, the trial court's order actually undermines Illinois law by usurping one of Illinois' safe harbors. Your Honor, I see that I'm into my rebuttal time, so unless you have a question, I will defer to my opposing counsel. Thank you, Mr. Bishop. Good morning, may it please the court. My name is Edward Bishop, and I represent the District Court of Illinois. As the court has found, Selective has fought tooth and nail against Croatian Supply, and this appeal is just another example of that. For example, regarding this case, Selective has misrepresented the facts. They've ignored the findings of the District Court. They've narrowly interpreted Section 155, so it's virtually meaningless, and they presented arguments that were never made before the District Court for them to consider. Turning to the facts, one of the facts about this case is Selective argues that Croatian Supply has brought a standalone 155 claim. That's simply not true. The complaint of this case has a breach of contract claim. In fact, we had a summary judgment hearing on that, and we received a favorable order on that, where we won the breach of contract claim. There's been a bifurcation with regard to the trials in this case. One, we had the 155 trial. One, we won on summary judgment, and we are going to have the damages with regard to the breach of contract claim. So there is a breach of contract claim here. It is count one. I'm sorry, count two. Moreover, on this appeal, jurisdiction is under 54B. For jurisdiction to be under 54B, there has to be more than one claim pending. There is. There's a breach of contract claim. Again, this is not a standalone 155 claim. It cannot be. Turning to the next issue with regard to what the State Court decided, Selective wants to state that the State Court decided the breach of contract claim. It did not. It only decided one issue. It decided the duty to defend, and then it turned to another issue that Selective claimed it did not understand what a duty to defend means. There's no order from the State Court that addresses anything other than those two things, a duty to defend, and what it means. It means pay the bills. The State Court explicitly deferred the breach of contract claim to the District Court, along with the 155 issue. It was not tried twice. It was not decided twice. Neither one of those were decided twice. Selective did not appeal that order at any time. It went with it. Now, with regard to whether or not Selective's conduct has been proper, the State Court, again, never determined that. The 155 was never there. Also, within their brief, they talk about whether or not CSI just went ahead, and Creation Supply anyway, and settled the underlying Oregon action and just walked away. It was not a walk-away agreement whatsoever. What had happened is Creation Supply had to take an injunction. They cannot sell the markers at issue. In other words, they were left virtually without business, a viable business. That's not a walk-away. That's not payment of nothing. Turning to other arguments with regard to their... Could I interrupt for just a moment, Mr. Bishop? Can you help me with something? What, if anything, is the relationship between the Section 155 case and the breach of contract case from a factual point of view? Is there any overlap? There could be some overlap with regard to the damages at the end of the day. One of the things that Selective continues to say is that we are only asking for consequential damages in the breach of contract. However, we're asking for attorney's fees, too, with regard to what we had to do. In other words, direct damages with regard to how we had to defend against their declaratory judgment action. There is a little bit of overlap, but not substantial enough where jurisdiction would not be proper under 155. Let me pursue that one more question. Under your Section 155 claim, what is your factual focus then? What are you complaining about? We're complaining, first of all, with regard to their unreasonable delay in settling. They didn't pay. It's in our complaint. They refused to pay in a timely manner. One of the things that had to be done in this case is that they continued to say that they made a good faith payment. We were left to go it alone in the case in Oregon and fight them. So there was a delay in payment and then with regard to the loss under the policy, too. So there were actually two things that we actually were arguing, and that's ours, because they refused to defend us, and it was baseless. I think that's one of the things that's important in this case, is that their refusal to defend us in the Oregon action, and as the court had found after the trial on the 155 issue, is that they never provided us with a good faith basis not to provide any coverage whatsoever, even under a reservation of rights. They abandoned us. Then why couldn't those factual allegations have been tried in the state court, along with the declaratory judgment action? We, at that point, they probably could have been brought into state court, but the problem with that at the point we did not know it, what had happened is after the state court, and this is interesting, after the state court had actually found there was a duty to defend, they still wouldn't pay their bills. So there was at that point in time, they wouldn't pay their bills. They refused to pay anything because they claimed they didn't know what a 155 meant, or not a 155, what a duty to defend, so they weren't paying their bills. And so we had to do something with regard to, to get them to pay their bills in a timely manner. They seem to indicate that, Selective seems to indicate that until a court tells them what to do, they don't have to pay anything. And that's the problem that Judge Kukor has had with them, is that they don't do anything unless a court tells them what to do. We were already there with regard to the state court on the issue of whether or not there was a duty to defend, which they had brought. The state court had not done anything. We got to choose where we went with regard to jurisdiction in bringing this case. There was nothing that was decided other than the duty to defend in front of the state court. It was not the breach of contract. There was not the breach of contract damages. There was not the 155 that was pending. So we brought it here. Turning back to other arguments, they don't address the district court's findings with regard to vexatious and unreasonable conduct whatsoever in their briefing. They, at the end of the day, they just go ahead and try to make, there was a bona fide dispute. However, even with that, we've proven later on through discovery that we only conducted in the federal court, that they knew better, that they knew there was coverage. They just weren't going to do it. But we didn't know that because we didn't have any discovery pending anywhere. So since they never discussed this, their fallback position with regard to a bona fide coverage dispute rings hollow. They already knew there was coverage when they rejected us, which we found out later. They just weren't going to provide coverage. And later on, they mended the hole in terms of, in their rejection letter that the court looked at, they didn't have any basis. And later on, on appeal with regard to the duty to defend, they were making arguments that weren't in their initial rejection letter, that there was a mismatch between the advertisement and the trade dress. So just by them mending the hold, as set forth in the TKK case, that shows additional bad faith. In other words, it was a continuation of what they were doing in state court and what we found out later on, that they knew behind the scenes and that they were continuing to make arguments and change their position all the time. Another fallback position is with regard to Hennessey. Turning to Hennessey, Hennessey is an arbitration issue in terms of what the arbitration agreement holds. There is no discussion in Hennessey with regard to 155 and the duty to defend having to be the 155. There's nothing. Again, 155 is an extra contractual remedy. We have a breach of contract. It was reserved over, it's here. With regard to the findings, again, the purpose of 155 is to make us whole. It doesn't make any sense that a 155 claim cannot be brought with a breach of contract and it cannot be brought with breach of contract case, as we have here, and that it must be brought with regard to the duty to defend action only. That would be narrowing 155 in the statute well beyond what's required. Again, the issues here are the unreasonable delay that they've in paying us and with regard to the loss payable. Breach of contract issue could have been brought in the state court, right? It could have been brought in the state court, but again, the state court allowed it because there was nothing going on in the state court with regard to those issues. We could have brought it there. Again, we didn't have to in this case, and they didn't appeal the state court allowing us to bring it here. And you say the state court allowing, you're talking about which state court? The circuit court here in Cook County. It actually, in their order, they allowed us to bring it here. In their order, they said it was fine. They deferred where we could go because, again, nothing had been going on in the state court. I see. And I think that was the issue. There was nothing going on with the state court, and the state court actually said count two of CSI's amended counterclaims are voluntarily dismissed without prejudice for leave to refile allowed. And they also said CSI's rights are expressly reserved to maintain its action against selective and federal court regarding claims of breach of contract and Illinois insurance code. So the circuit court specifically allowed us to bring it here. Selective did not appeal that at all, and now Selective's complaining that it shouldn't have been. That is proper, too, with regard to the award of fees under Section 155. Again, it's to make us whole with regard to what they've done. And again, they have challenged us at every time they get a chance, they have fought us. And the court has went through, and the judge has gone through all of their arguments with regard to whether or not the fees are proper. We provided detailed billings. We provided evidence of reasonableness with regard to those billings. And then again, Selective argues against creation supply. Our petition, they challenged the sufficiency. They challenged whether or not we could reach out to the Illinois Department of Insurance, whether or not we could move to Hammond. The court took all of those things under consideration. And when the court took all of those items under consideration, it denied, and it awarded us our petition for fees. And therefore, this has been, as the court found, a never-ending litigation, and it found our actions to be reasonable. Nevertheless, Selective wants a redo of that petition. And again, the court considered Mr. Hammond. Again, they rely on Mr. Hammond. But again, the court considered his qualifications and found them lacking. And he was not even disclosed before the briefing. Council, was there $23,000 paid in the state court action to your company? We collected, at the end of the day, it was, I believe, $195,000 in the state court action. But that was only with regard to our fees and expenses that we incurred in the Oregon action. In other words, we had spent those for litigation that we were not helped with at all. We were never provided with any defense. And so that's what was awarded there. But again, it was under just the duty to defend. Were there items listed as L0005 and L0007 on page 39 of Selective's brief talking about $23,000? What had happened with regard to that is we had to continue on, and we were trying to cover in some issues because we did not have a defense. And that was the problem. Since we didn't have a defense, we were actually trying to cover for some of it so that we would have somebody providing a defense for us, mainly the supplier of the markers. So we had had to launch some litigation to try to make ourselves whole and try to defend ourselves since the insurance company wasn't going to do anything whatsoever to help us. Thank you. Okay. Thank you. Mr. Campbell? Yes. Thank you, Your Honors. Two quick points, if I could. One illustrates a recurring theme. You were told that Selective refused to pay what it owed in the state court until the court told them to do so, as if that were a problem. But here's two things that you weren't told. The reason there was an appeal of the fee award was because CSI had yet another inflated fee demand. Selective paid $178,000 two years before the appellate decision in a good faith effort to quantify the amount that was going to be due and owing. Ultimately, the appellate court reversed the trial court, disagreed with CSI, and when it came back, Selective simply owed the difference between the $178,000 and the $195,000, which it paid even before there was an order from the court. You weren't told that. But it's significant, in part because it shows how Selective operates, but in part it shows a deeper problem here. This case is about statutory construction. 155 is a statute. And the statute says, I'm going to read from the Nyman v. Economy Preferred case. It says the statute begins by stating that it applies to those insurance cases in which one of three issues remained undecided. So liability in a policy of insurance decided in the state court in 2015. Not in the federal court, in the state court. Amount payable there under? $195,000 decided in the state court, not in the federal court. Those issues were decided. So under the statute, those issues no longer support a 155 claim. And the only thing they would have had at that point was whether there was a question about an unreasonable delay in settling a claim. That's not what they asked for. Their complaint talked about monies due and owing that had been judicially determined. That's a judgment. The Nyman case says that's outside the scope of 155. Why? Because 155 is a penalty statute. It's narrowly construed. And the word judgment appears nowhere there. This case is about statutory construction. This court has said, in Hennessey and following the Illinois Supreme Court precedent, that section 155 is not a standalone cause of action, but that's exactly what was being asserted in the federal court. The fact that they now have a claim for consequential damages is beside the point. For the reasons we identified from the UNR versus Continental Insurance case, a consequential damage is a fruit of a different action from a penalty under 155. Your honors, we respectfully request that this court reverse the trial court and make clear that the very harms that Hennessey was trying to avoid not happen again, as they inevitably will unless the door is closed on these kinds of claims. Your honors, we are very grateful for your time and for your effort and the work you put into this case. Thank you. Thanks to both counsel. We can under advise.